The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 8, 2026

**NO. S-1-SC-40419**

**STATE OF NEW MEXICO,**

Plaintiff- Respondent,

v.

**BRYAN SCHUSTER,**

Defendant- Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Melissa A. Kennelly, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Respondent

**OPINION**

**BACON, Justice.**

{1}    Defendant Bryan Schuster challenges the Court of Appeals' reversal of the district court's grant of his motion to dismiss for violation of his right to a speedy trial. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."); *see also* N.M. Const. art. II, § 14 ("In all criminal prosecutions, the accused shall have the right . . . to have . . . a speedy public trial."). Defendant was arrested pursuant to a traffic stop and charged with receiving or transferring a stolen motor vehicle, possession of a controlled substance, false evidence of title and registration, driving with a suspended license, and driving without insurance. Three years elapsed between Defendant's arrest and the district court's disposition of his motion to dismiss, though Defendant was released on his own recognizance throughout.

{2}    Speedy trial challenges in New Mexico are governed by "the four-factor test set forth in *Barker* [*v. Wingo*, 407 U.S. 514, 530 (1972)], balancing the length of delay, the reason[s] for delay, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505. Defendant challenges three of the Court of Appeals' determinations under *Barker* as improper in differing from the district court's correct determinations.

Specifically, the Court of Appeals concluded the reasons-for-delay factor weighs "moderately to heavily" for Defendant rather than "heavily," the assertion-of-the-right factor does not weigh heavily against the State, and Defendant did not show particularized prejudice. *See State v. Schuster*, A-1-CA-40322, mem. op. ¶¶ 7, 22, 25 (N.M. Ct. App. Apr. 10, 2024) (nonprecedential). Defendant further asserts the Court of Appeals ignored its own precedent in concluding his claimed prejudice was not particularized.

{3}     Under our weighing of the *Barker* factors, we hold the first three factors weigh heavily against the State. Accordingly, we reverse the Court of Appeals without reaching analysis of the prejudice factor. In addition, to guide lower courts, we explain in detail our departure from the Court of Appeals' analysis regarding the reasons-for-delay and assertion-of-the-right factors.

## I.     BACKGROUND

{4}     Defendant was arrested on March 8, 2019, and released on his own recognizance the same day under conditions of release set by the magistrate court and subsequently largely adopted by the district court. On March 15, 2022, more than three years later, the district court conducted a hearing on Defendant's Motion to Dismiss for Violation of Speedy Trial Rights, which the court granted. We discuss

the intervening procedural background below as relevant to the lower courts' speedy trial determinations.

{5}     In granting Defendant's motion to dismiss, the district court's findings included that "[t]his is a simple case, in which a delay of longer than one year is presumptively prejudicial to Defendant." In *State v. Garza*, 2009-NMSC-038, ¶ 2, 146 N.M. 499, 212 P.3d 387, we "update[d] our guidelines for determining the length of delay necessary to trigger the speedy trial inquiry[:] twelve months for simple cases, fifteen months for cases of intermediate complexity, and eighteen months for complex cases" (*Garza* guidelines). Accordingly, the district court found the three-year length of delay—being three times the *Garza* guideline—to be presumptively prejudicial to Defendant, thereby triggering further inquiry into the *Barker* factors. *See State v. Urban*, 2004-NMSC-007, ¶ 11, 135 N.M. 279, 87 P.3d 1061 ("The first factor, the length of the delay, serves two functions. Initially, the length of delay must cross a threshold to establish a presumption of prejudice and to trigger further inquiry into the other factors. Once that threshold has been crossed, the burden of persuasion shifts to the [s]tate to show that, considering the four factors as a whole, the defendant's constitutional rights have not been violated.").

{6}     Analyzing the reasons-for-delay factor, the district court began by attributing two months to Defendant, due to his requested extension pursuant to the preliminary

examination; six months to neither party, due to COVID-19-related suspensions of jury trials; and the remaining two years and four months to the State. Regarding the State's culpable delay, the district court then took notice in its findings of the judicial backlog "situation . . . unique to Colfax County," New Mexico, stemming from a prosecutorial "policy of prosecuting all types of cases to the fullest extent and offering plea agreements that provide relatively little benefit to defendants, without regard for the effect that such a policy has on the [c]ourt's caseload, on the administration of justice, on defendants, or on victims and the community." The court further found "[t]he unintended effect of the Colfax County prosecutors' policy has been to create an ever-expanding jury trial docket (from about 50 cases in 2019 to about 175 cases as of February 2022)," resulting in "an untenable bottleneck that has rendered it impossible for defendants to get speedy trials that are guaranteed by the federal and state constitutions." The court stated the situation is not explained by the effects of COVID-19, as even "[w]ithout the pandemic, the jury trial docket would still contain around 150 or more cases and would still be expanding each month." The hearing on the motion to dismiss included extensive discussion of this context, including the court questioning how the prosecutor's office planned to "triage" the backlog of simple fourth-degree felony cases like this one. The prosecutor, serving that jurisdiction since 2017, did not refute the court's

characterization and offered no clear plan to resolve the situation. Notably, the prosecutor did not refute the court's analysis of the plea terms offered to Defendant, offered three times without alteration, as "not a great plea," nor the court's perspective that such "lukewarm plea agreement[s]" have resulted in "a whole docket flooded with low-level felonies." In its order, the court stated it "has raised this issue with the prosecution in 2020 and again in 2021, and nothing has changed." Under this analysis, the court implicitly weighed "the reasons for the delay in this case and other cases like it" heavily against the State.

{7}	For the assertion-of-the-right factor, the district court found that "Defendant has more than adequately asserted his speedy trial right in this case by filing about five demands for speedy trial, in addition to the present motion to dismiss."

{8}	For the prejudice factor, the district court found particularized prejudice in Defendant having "lost employment and housing opportunities, his liberty [having] been restricted to the boundaries of Colfax County for three years, and [his having] been subject to arrest at any time during the past three years if he violates that restriction." The court found exacerbation of "typical stress and anxiety" in such a case due to "the extreme delay . . . attributable to the government." Alternatively, the district court found presumed prejudice under "the prosecution's bureaucratic indifference to the capacity of the criminal justice system [which] has caused a delay

so excessive that no showing of particularized prejudice is necessary." As support for this presumed prejudice theory, the court cited *State v. Taylor*, 2015-NMCA-012, ¶ 25, 343 P.3d 199, which it summarized as holding "the defendant's speedy trial right was violated without a particularized showing of prejudice" and quoted *State v. Palacio*, 2009-NMCA-074, ¶ 17, 146 N.M. 594, 212 P.3d 1148, "'It is well established that bureaucratic indifference weighs against the [s]tate and can establish a speedy trial violation.'"

{9}     In granting Defendant's motion to dismiss, the district court implicitly weighed the *Barker* factors and concluded, under a finding of either presumed or particularized prejudice, that Defendant's right to a speedy trial was violated. The State timely appealed.

{10}     The Court of Appeals reversed the district court in a memorandum opinion, concluding that Defendant failed to show particularized prejudice and that the other three factors did not all weigh heavily to support a claim of presumed prejudice. *Schuster*, A-1-CA-40322, mem. op. ¶ 26; *see Garza*, 2009-NMSC-038, ¶ 39 ("[G]enerally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect. However, if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted [the] right and not acquiesced to the delay, then the defendant

need not show prejudice for a court to conclude that the defendant's right has been violated.").

{11} Applying the *Barker* factors, the Court of Appeals first deferred to the district court's written finding that this is a simple case, determined the three-year length of delay triggered further analysis under *Barker*, and weighed the length-of-delay factor heavily against the State. *Schuster*, A-1-CA-40322, mem. op. ¶¶ 3-4 & n.1.

{12} Analyzing the reasons-for-delay factor, the Court of Appeals organized the total delay between arrest and dismissal into six specific periods, organization that the parties do not contest and we adopt below. *Id.* ¶ 7.

{13} During Period (A), March 8, 2019, to June 14, 2019 (three months and one week), the case was before the magistrate court. *Id.* ¶ 8. The Court of Appeals attributed two months of this period to Defendant for his requested extension of time regarding the preliminary examination and the remaining one month and one week of the period to the State as negligent or administrative delay. *Id.* ¶ 9.

{14} During Period (B), June 15, 2019, to March 16, 2020 (nine months), the case was bound over to the district court. *Id.* ¶ 7. The Court of Appeals confirmed and accepted the State's concession that the delay during Period (B) was negligent or administrative, noting the State "actively moved the case forward" only between June and August. *Id.* ¶¶ 10-11. Subsequent to the State's filings on August 26, 2019,

the record reflects no action by the State in this period to advance the case and includes a continuance due to the State not having obtained lab results as of March 2, 2020. The Court's assessment of Period (B) included a prior continuance of two months attributable to Defendant's failure to appear at the docket call on January 6, 2020.[1] *Id.* ¶ 10.

{15}   During Period (C), March 17, 2020, to July 15, 2020 (four months), jury trials were suspended due to the COVID-19 pandemic. *Id.* ¶ 12. The district court did not assign this delay to either party, and accordingly, the Court of Appeals "presume[d] the district court was correct." *Id.* ¶ 13.

{16}   During Period (D), July 16, 2020, to November 15, 2020 (four months), the suspension of jury trials was lifted, but the Court of Appeals concluded the State did not take "any action to move the case forward." *Id.* ¶ 14. The Court weighed Period (D) against the State as negligent or administrative delay. *Id.*

{17}   During Period (E), November 16, 2020, to January 1, 2021 (one month and two weeks), jury trials were again suspended due to the COVID-19 pandemic. *Id.* ¶

---

[1]The dissent asserts, based on Defendant's failure to appear, we should not accept the State's concession of negligent or administrative delay as the reason for the two months of the prior continuance. *Dissent* ¶ 69. However, the State conceded in its response to the motion to dismiss that it also did not have the relevant lab results at the time of the prior continuance. Accordingly, we accept the State's concession regarding the reasons for the Period (B) delay as a whole.

15. As with Period (C), the Court of Appeals again presumed the district court was correct and did not assign this delay to either party. *Id.*

{18} Period (F), January 2, 2021, to March 16, 2022 (fourteen months and two weeks), commenced when the suspension of jury trials was again lifted. *Id.* ¶ 16. The Court of Appeals determined "the State made no attempt to move the case forward" during Period (F), including representing to the district court in February 2022 "that it had neither subpoenaed nor contacted its witnesses even though the trial was scheduled in three weeks." *Id.* The Court also recognized that trial was rescheduled twelve times by the district court during Period (F) without any reason being provided and that Defendant filed two additional written demands for a speedy trial and his motion to dismiss. *Id.* The Court of Appeals weighed Period (F) against the State as "negligent or administrative delay related to a 'congested docket.'" *Id.* (brackets omitted) (quoting *Garza*, 2009-NMSC-038, ¶ 29).

{19} In weighing the aggregated periods of delay, the Court of Appeals recognized "[t]he State's twenty-eight[-]month delay is twice as long as that necessary to trigger a speedy trial inquiry of a simple case" and that, while "the State made some efforts to take the case to trial, . . . there are long periods of time in which it either was inactive, caused further delay, or did not move the case forward." *Id.* ¶ 17. The Court then concluded "the State's delay weighs moderately to heavily" and that, "[b]ecause

the State's period of delay goes well beyond the [period of delay attributed to Defendant and the neutral periods of delay], . . . this factor in total weighs moderately to heavily against the State." *Id.* ¶ 18.

{20} Analyzing the assertion-of-the-right factor, the Court of Appeals concurred with the district court "that Defendant 'more than adequately asserted his speedy trial right'" but nonetheless did not weigh this factor heavily against the State. *Id.* ¶ 22. The Court stated that any one of Defendant's five assertions "would suffice"—we note six assertions in the record[2]—but explained two reasons for not weighing the factor heavily. *Id.* ¶ 20.

> First, other than his motion to dismiss, his assertions are pro forma and therefore are given little weight. *See* [*Ochoa*, 2017-NMSC-031, ¶ 41]. Defendant's three written demands are identical to each other, the body of each is one sentence, and none contain any argument or provide details about the alleged violation. Second, Defendant's written assertions and motion to dismiss were all filed within months of scheduled trials. Such assertions merit less weight because, "the closer to trial an assertion is made, the less weight it is given." [*State v.*] *Gurule*, 2025-NMSC-010, ¶ 39[, 536 P.3d 775] (text only) (citation omitted).

*Schuster*, A-1-CA-40322, mem. op. ¶ 20.

---

[2]The Court of Appeals' tally includes Defendant's "oral demand at Defendant's arraignment," as well as three written demands and the motion to dismiss. *Schuster*, A-1-CA-40322, mem. op. ¶ 20. This count omits defense counsel's initial assertion of the right in his written entry of appearance in the magistrate court.

{21} For the prejudice factor, the Court of Appeals determined Defendant did not show particularized prejudice, finding no evidentiary support in the record substantiating the district court's conclusion otherwise. *Id.* ¶ 25 (citing *State v. Spearman*, 2012-NMSC-023, ¶ 39, 283 P.3d 272); *see Spearman*, 2012-NMSC-023, ¶ 39 ("Allegations of counsel are not generally considered evidence.").

{22} The Court of Appeals reversed the grant of the motion to dismiss on the basis of the lack of particularized prejudice and the other three *Barker* factors not weighing heavily against the State as required under a presumed prejudice analysis. *Id.* ¶ 26. Defendant timely appealed, and this Court granted the petition for writ of certiorari as to whether the Court of Appeals properly weighed the *Barker* factors.

## II.   DISCUSSION

{23} In reviewing a speedy trial claim under the four-factor test in *Barker*, "We defer to the district court's factual findings . . . but weigh each factor de novo." *Ochoa*, 2017-NMSC-031, ¶ 4. "The speedy trial analysis is not a rigid or mechanical exercise, but rather 'a difficult and sensitive balancing process.'" *Id.* ¶ 5 (quoting *Barker*, 407 U.S. at 533). "The speedy trial right is 'amorphous, slippery, and necessarily relative.'" *Id.* (quoting *Vermont v. Brillon*, 556 U.S. 81, 89 (2009)); *see also Garza*, 2009-NMSC-038, ¶ 13 ("*Barker*'s formulation 'necessarily compels courts to approach speedy trial cases on an ad hoc basis'" (quoting *Barker*, 407 U.S.

at 530)). Notwithstanding its unique character among constitutional rights, *Barker*, 407 U.S. at 519, discussed further below, we remain mindful that "the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).

## A. The Length-of-Delay Factor Weighs Heavily Against the State

{24} The total delay in this case is more than three years between Defendant's arrest and the grant of the motion to dismiss. Being three times the *Garza* guideline for a simple case, this length of delay is presumptively prejudicial and requires further inquiry into the *Barker* factors. *Garza*, 2009-NMSC-038, ¶ 21; *see also State v. Serros*, 2016-NMSC-008, ¶ 26, 366 P.3d 1121 ("A delay that crosses the threshold for presumptive prejudice necessarily weighs in favor of the accused; the only question is, how heavily?"). *But see Garza*, 2009-NMSC-038, ¶ 49 ("We emphasize that these guidelines should not be construed as bright-line tests. Rather, they are meant to guide the district courts' determination of 'presumptively prejudicial' delay.").

{25} As the first factor, the length of delay is not at issue here, as we agree with both lower courts and both parties that this factor weighs heavily against the State. *See* Rule 12-318(A)(4) NMRA ("The argument [of the brief in chief] shall set forth a specific attack on any finding, or the finding shall be deemed conclusive."); Rule

12-318(B) ("An answer brief shall conform to the requirements of the brief in chief.").

**B.      The Reasons-for-Delay Factor Weighs Heavily Against the State**

{26}      As we explain herein, when analyzing the reasons-for-delay factor, the Court of Appeals should have assigned heavy weight to the State's protracted delay because that delay constituted bureaucratic indifference. Concurrently, this delay was exacerbated by the prosecutorial policy of taking every case to trial and offering pleas without favorable terms—a policy recognized by the district court as effecting systemic delay in Colfax County. Under either of these considerations, we hold this factor weighs heavily against the State. We additionally caution that when determining the weight of this factor, courts should not apply methodologies that improperly defray or excuse governmental culpability.

{27}      "Closely related to length of delay is the reason the government assigns to justify the delay. The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citations omitted). As the Court of Appeals correctly noted, *Schuster*, A-1-CA-40322, mem. op. ¶ 23, the *Barker* test considers three types of delay:

> First, [a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. Second,

negligent or administrative delay weighs less heavily but nevertheless weighs against the [s]tate because the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Third, neutral delay, or delay justified by a valid reason, does not weigh against either party.

*Ochoa*, 2017-NMSC-031, ¶ 18 (first alteration in original) (internal quotation marks and citations omitted); *see Barker*, 407 U.S. at 531 ("[D]ifferent weights should be assigned to different reasons.").

### 1. The reasons-for-delay factor weighs heavily due to the protractedness of the negligent delay and the inaction by the State amounting to bureaucratic indifference

{28}    Importantly for this case, we have recognized, "The degree of weight we assign against the [s]tate for negligent delay is closely related to the length of delay: '[O]ur toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial.'" *Garza*, 2009-NMSC-038, ¶ 26 (second alteration in original) (quoting *Doggett v. United States*, 505 U.S. 647, 657 (1992)). We have further recognized that negligent delay may rise to the level of bureaucratic indifference, which "weigh[s] more heavily against the state than [negligence based on] simple case overload, particularly when the defendant has attempted to safeguard his rights." *Zurla v. State*, 1990-NMSC-011, ¶ 16, 109 N.M. 640, 789 P.2d 588. As our Court of Appeals has stated, such bureaucratic indifference may be demonstrated by "[t]he [s]tate's failure to act." *Palacio*, 2009-

NMCA-074, ¶ 19. While *Zurla* and *Palacio* both concerned the state's insufficient efforts to locate incarcerated defendants, the principle we cite is not bound to that context. *See Zurla*, 1990-NMSC-011, ¶ 15 (criticizing "an unacceptable indifference by the prosecution to its constitutional duty 'to make a diligent, good-faith effort to bring a defendant to trial'" (quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969))); *see also Doggett*, 505 U.S. at 657 ("[P]ersistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice."); *State v. Moore*, 2016-NMCA-067, ¶ 14, 378 P.3d 552 (weighing eight months heavily against the state where its "actions [in the magistrate court], or lack thereof, qualify as bureaucratic indifference"); *Taylor*, 2015-NMCA-012, ¶¶ 15-17 (assigning heavy weight to the reasons-for-delay factor where "the [s]tate did *nothing* to bring the case to trial . . . and offers no explanation for its inaction"); *State v. Stock*, 2006-NMCA-140, ¶ 25, 140 N.M. 676, 147 P.3d 885 ("[T]he [s]tate's inaction in this case can be characterized as 'bureaucratic indifference,' which we have held to weigh against the state more heavily than mere negligence." (quoting *State v. Laney*, 2003-NMCA-144, ¶ 17, 134 N.M. 648, 81 P.3d 591)).

{29}     The Court of Appeals characterized the State's culpable delay in the present case—identified by the Court in Periods (A), (B), (D), and (F)—as negligent or administrative, noting that "nothing in the record suggests deliberate or intentional

delay." *Schuster*, A-1-CA-40322, mem. op. ¶¶ 8-17. As discussed, the Court weighed this factor moderately to heavily against the State, explaining that result as follows:

> The State's twenty-eight[-]month delay is twice as long as that necessary to trigger a speedy trial inquiry of a simple case. During those twenty-eight months, the record shows that the State made some efforts to take the case to trial, but there are long periods of time in which it either was inactive, caused further delay, or did not move the case forward.

*Id.* ¶ 17 (citation omitted).

{30} We conclude the Court of Appeals underweighed the State's culpability where Period (F) alone constitutes a period of negligent delay so protracted as to weigh this factor heavily against the State and where the State's persistent inaction constitutes bureaucratic indifference. The case remained in apparent limbo for more than a year during Period (F), rescheduled almost every month without any stated reason, and "the State made no attempt to move the case forward" during this period. *Id.* ¶ 16. Meanwhile, Defendant asserted his desire for a speedy trial during Period (F) through two written motions and his motion to dismiss, thereby "attempt[ing] to safeguard his rights" in a manner further supporting heavy State culpability. *Zurla*, 1990-NMSC-011, ¶ 16. Despite these facts, and despite this fourteen-month-and-two-week period of delay ending only due to dismissal, the Court of Appeals classified the delay as ordinary negligent or administrative delay. *Schuster*, A-1-CA-

40322, mem. op. ¶ 16. Further, we note the State's final action in the record to actually advance this case occurred on August 26, 2019, during Period (B)—one year and four months before Period (F) began—thus resolving any doubts as to whether the State's inaction was sufficiently protracted to result in heavy weight of the factor. *See id.* ¶¶ 10-16. We exclude the five months and two weeks of delay of Periods (C) and (E) from this consideration, during which periods jury trials were suspended due to the COVID-19 pandemic; even with that exclusion, however, the facts otherwise between August 29, 2019, and the grant of the motion to dismiss on March 16, 2022, clearly demonstrate the State's bureaucratic indifference in this case, bolstering the heavy weight of the factor in favor of Defendant's claim.

{31}    The State does not meaningfully refute these facts. The State primarily argues that the factor should not weigh heavily where "[t]here is nothing in the record suggesting that the delay was intentional or tantamount to intentional." Attempting to answer Defendant's invocation of *Taylor*, the State further claims, without supporting detail, that this case does not involve conduct that falls within the "'inexcusably indifferent'" governmental conduct in that case.

{32}    The State's cursory arguments fail. First, as our caselaw cited herein establishes, intentionality is not a requirement for concluding heavy weight of the factor either under protractedness of negligent delay generally or under bureaucratic

indifference specifically. Second, *Taylor* characterized as "inexcusably indifferent" the state's complete inaction during a fifteen-month period of delay between a continuance and a trial setting, in dereliction of its constitutional duty to bring the defendant to trial. 2015-NMCA-012, ¶¶ 14-16; *see id.* ¶ 16 ("[T]his is a case in which the [s]tate was inexcusably indifferent to its affirmative obligation to bring a simple case to trial."). Given the comparable facts of Period (F), much less the State's inaction dating back to Period (B), we see the characterization in *Taylor* as aptly invoked here by Defendant, and the State presents no meaningful argument under the facts otherwise. The State's anemic rebuttal is significant here, as the State, "consistent with general principles regarding claims of prejudice to a criminal defendant's constitutional rights," bears the burden "to demonstrate that, on balance, the defendant's speedy trial right was not violated." *Zurla*, 1990-NMSC-011, ¶¶ 28-29.

{33}     The dissent asserts that classifying otherwise negligent delay as bureaucratic indifference requires evidence the state took no affirmative steps to advance a case despite possessing available resources to do so, whereas "[h]ere there is no action the State failed to take." *Dissent* ¶¶ 83-86. We agree that the essence of bureaucratic indifference under *Zurla*, *Palacio*, and *Taylor* is the state's failure to act where it otherwise could do so. *Zurla*, 1990-NMSC-011, ¶ 15; *Palacio*, 2009-NMCA-074, ¶

19; *Taylor*, 2015-NMCA-012, ¶¶ 14-16. However, the dissent's suggestion that the State took all available steps to advance this case, *dissent* ¶ 85, is refuted both by the governmental inaction in the record, discussed above, and by our caselaw's frequent recognition that "[i]t is ultimately the state's duty to make sure that defendants are brought to trial in a timely manner." *Stock*, 2006-NMCA-140, ¶ 25 (citing *Barker*, 407 U.S. at 527); *see Barker*, 407 U.S. at 527 ("A defendant has no duty to bring himself to trial; the [s]tate has that duty as well as the duty of [e]nsuring that the trial is consistent with due process."); *see also Serros*, 2016-NMSC-008, ¶ 37 (quoting *Stock*, 2006-NMCA-140, ¶ 25). We echo the conclusion in *Stock* that the state has a responsibility "to ascertain what [is] happening in [a] case or to move the case forward," and nothing in this case would support that the State exerted appreciable effort to meet such a responsibility. *Stock*, 2006-NMCA-140, ¶ 25. For these reasons, we weigh this factor heavily against the State.

**2. The reasons-for-delay factor weighs heavily due to the prosecutorial policy exacerbating delay as found by the district court**

{34} Additionally, Defendant points to the district court's findings "that the delay in this case resulted from the policy of the Colfax County district attorney's office" of refusing to offer "meaningful pleas or diversion [programs]" even for low-level felonies, resulting in unique systemic congestion that rendered speedy trials unavailable to defendants in that jurisdiction.

{35} The Court of Appeals made no mention whatsoever of the district court's findings regarding the determinative role in the delay played by the relevant prosecutorial "policy of prosecuting all types of cases to the fullest extent and offering plea agreements that provide relatively little benefit to defendants." This absence is significant because (1) the district court specifically attributed the reasons for the two-year-and-four-month governmental delay to the "untenable bottleneck" of the county's trial docket created by this prosecutorial policy and (2) factual findings by the district court in a speedy trial claim are entitled to deference, *Serros*, 2016-NMSC-008, ¶ 20. Applying that deference, and in the absence of relevant rebuttal by the State, we conclude the prosecutorial policy identified by the district court provides an independent basis for the reasons-for-delay factor to weigh heavily against the State.

{36} As discussed above, the district court found that the prosecutorial policy in question was responsible "for the delay in this case and other cases like it" where the resultant congestion of the trial docket "has rendered it impossible for defendants to get speedy trials." The court further found the relevant policy had been exercised for at least five years, the "ever-expanding jury trial docket" was not attributable to the COVID-19 pandemic, and "nothing has changed" in this situation despite the court raising the issue with the prosecution in each of the previous two years. These

findings in the district court's order followed extensive discussion of these issues at the hearing on the motion to dismiss. The discussion included the following characterizations by the court, unrebutted by the prosecutor:

> Analyzing the plea that was offered [in this fourth-degree felony case], it's not a great plea. . . . What's happening now is we just have a whole docket flooded with low-level felonies. . . . The court can't possibly have 100, 150 jury trials. We don't even have enough people in the county to serve on those juries. . . . The way I see it is that it's the [prosecutor's] office that's in complete control over how many cases are maintained on the court's docket [and over] how many cases that the public defenders have to have on their caseload.

While the issues were discussed at length by the court and counsel for both parties, the existence and effect of the prosecutorial policy at issue was not meaningfully rebutted by the State at the hearing. Under the foregoing evidence, we have no trouble concluding the district court's findings regarding the relevant prosecutorial policy are sufficiently substantiated by the record to warrant deference.

{37}   Before this Court, the State effectively concedes the issue. The State acknowledges the district court's relevant findings and relies on the premise that, "even if the prosecution's plea bargaining approach resulted in more trials and a larger trial docket, that does not equate to intentional delay or anything functionally equivalent." As we have discussed, intentionality is not a requirement for heavy culpability for this factor.

{38} The dissent contends the district court's findings are not entitled to deference because they were not supported by substantial evidence in the record, where the hearing consisted only of discussion between the court and counsel for both parties. *Dissent* ¶¶ 88-90. While we agree the evidentiary value of this hearing was limited, the dissent ignores that the district court inherently took judicial notice of adjudicative facts well within its purview under Rule 11-201 NMRA. Under the rule, a court "at any stage of the proceeding" may sua sponte take notice of facts "not subject to reasonable dispute because [they are] generally known within the court's territorial jurisdiction[ or] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 11-201(B)-(D). In its order, regarding "the reasons for the delay in this case and other cases like it," the district court implicitly took judicial notice of facts sufficient to establish the relevant policy based on the court's own experience in its territorial jurisdiction, including:

- The absence of a "rule of criminal procedure in the district courts setting forth a time limit for trial as there is in the magistrate courts" which would provide "incentive for prosecutors in Colfax County to seek early and efficient resolution of cases";
- The "policy" exercised by "[t]he prosecutors who have worked in Colfax County over the last five years or more, and more particularly the prosecutors

who have been involved [in] this case" "of prosecuting all types of cases to the fullest extent and offering plea agreements that provide relatively little benefit to defendants";

- The court's "ever-expanding jury trial docket (from about 50 cases in 2019 to about 175 cases as of February 2022)," resulting in "an untenable bottleneck that has rendered it impossible for defendants to get speedy trials";

- The effects of the pandemic not being responsible for the congested jury trial docket in Colfax County, which "would still contain around 150 or more cases and would still be expanding each month" under the prosecutorial policy; and

- The court having "raised this issue with the prosecution in 2020 and again in 2021, and nothing has changed."

Additionally, the concerns of Rule 11-201(E) (opportunity to be heard) are not raised, as the State had ample opportunity to address the court's noticed facts at the hearing and since, including in its briefing here. In that context, the lack of rebuttal by the prosecutor on relevant circumstances is significant. The dissent cites anecdotal information shared by the prosecutor at the hearing, such as that her own personal caseload had decreased during the relevant period, *dissent* ¶ 89, but nothing in the prosecutor's commentary or the State's briefing here impugns the district

court's factual findings supporting the existence of the relevant policy affecting the Colfax County trial docket generally.

{39} The dissent also asserts the district court's commentary on the specific plea terms offered to Defendant was improper. *Dissent* ¶ 102. We disagree. The issue before the court included whether the State was culpable for unreasonable delay in violation of Defendant's right to a speedy trial. Discussion at the hearing relevantly included whether a prosecutorial policy existed in tension with the State's obligation to move cases forward, including Defendant's case. In that context, it was not improper for the court to consider whether the prosecution had taken available steps to advance Defendant's three-year-old case, including offering reasonable plea terms. This was not a hearing for judicial approval of the plea itself, and thus the dissent's citations invoking the specter of judicial curtailment of prosecutorial discretion are inapposite. *Dissent* ¶ 103. Discussion of a potential violation of a defendant's speedy trial right does not bear on the prosecutor's discretion to offer plea terms, and such discretion does not affect the district court's ability to act in furtherance of a defendant's rights. The dissent's misplaced concerns distract from our weighty interests here: "For more than one hundred years this Court has recognized the authority of courts to act to protect a defendant's fundamental rights." *State v. Vasquez*, 2025-NMSC-008, ¶ 17, 563 P.3d 901 (citing *State v. Garcia*, 1914-

NMSC-065, ¶ 18, 19 N.M. 414, 143 P. 1012 (on motion for rehearing)); *see Garcia*, 1914-NMSC-065, ¶ 18 ("There exists in every court, however, an inherent power to see that a [person]'s fundamental rights are protected in every case.").

{40} We have previously recognized the role of a prosecutorial policy in contributing to the heavy weight of the reasons-for-delay factor. In *Serros*, the state exercised a policy in sexual abuse cases of "restrict[ing] interviews of the victim and the victim's family" until the conclusion of plea negotiations. 2016-NMSC-008, ¶ 71. While "mindful of the need to avoid re-traumatizing victims and their families," we concluded the resultant delay in that case "illustrates the havoc that such a policy can wreak on an accused's right to a speedy trial." *Id.* ¶ 72. In combination with other negligent delay by the state, we held this prosecutorial policy resulted in the factor weighing heavily in the defendant's favor. *Id.* ¶ 75.

{41} In this case, deferring to the district court's findings, we conclude the pattern of unexplained trial continuances—sixteen between January 2020 and February 2022, only two of which were filed during pandemic-related trial suspensions—was exacerbated, if not fully caused, by the prosecutorial policy at issue. Under this conclusion, the systemic delay created by the policy and faced by Defendant would sustain our holding of heavy weight for this factor even apart from our analysis above regarding negligent delay and bureaucratic indifference. Doubtless, in the

present case these causes of heavy delay are intertwined. We address them separately to clarify the importance of a court incorporating each into its reasons-for-delay analysis. *See Barker*, 407 U.S. at 533 (summarizing that the factors "must be considered together with such other circumstances as may be relevant").

### 3. Proper methodology in weighing the reasons-for-delay factor

{42}    We take this opportunity to review methodologies the Court of Appeals may have applied in reaching its moderate-to-heavy result for the reasons-for-delay factor. We clarify that proper reasons-for-delay analysis focuses on the actual culpability of the parties, not relative culpability or a balancing of the months of delay attributable to each party. *See* N.M. Const. art. VI, § 3 ("The supreme court . . . shall have a superintending control over all inferior courts."). The Court of Appeals assessed that "[d]uring those twenty-eight months [attributable to the State], the record shows that the State made some efforts to take the case to trial, but there are long periods of time in which it either was inactive, caused further delay, or did not move the case forward." *Schuster*, A-1-CA-40322, mem. op. ¶ 17. This language invites the question of how the Court weighed this factor.

{43}     Because the Court of Appeals did not assign individual weights to the six specific periods of delay,[3] we do not know how it reached its conclusion. For instance, if the Court determined the cited "long periods" of governmental delay that clearly exceeded the applicable *Garza* guideline should weigh only moderately to heavily against the State, then the law dictates a different result, as discussed. That is, while the Court's *methodology* would be proper if it focused on the culpability of the parties for the extreme delay, with the ultimate inquiry being whether the State's actions created unconstitutional delay, its ultimate conclusion was incorrect.

{44}     Alternatively, however, if the Court of Appeals' conclusion of moderate-to-heavy weight reflects either that the Court (1) was describing the *range* of the State's culpability across its multiple periods of delay or (2) *averaged* the weights of those multiple periods of delay, then applying either methodology was error. If the former, the Court's result presumably conveys the range between the State's *moderate culpability* in Periods (A) and/or (B) and its *heavy culpability* in Periods (D) and/or (F); if the latter, the Court's result presumably conveys the State's heavy culpability

---

[3]The Court of Appeals articulated its duty to "evaluate the reasons for each period of delay, determine if either party is responsible for it and, if so, *assign weight to it*." *Schuster*, A-1-CA-40322, mem. op. ¶ 5 (emphasis added). Instead, however, the Court evaluated the reasons for and characterized the nature of the delay in each period without assigning specific weights to each.

in one or more periods *in combination with* periods of lesser culpability. The effect of either methodology is to improperly reduce or excuse the State's culpability.

{45}    In a case such as this one, wherein a sufficiently prolonged period of negligent delay or a sufficient period of bureaucratic indifference warrants heavy weight of the factor against the state, such a critical mass of heavy delay cannot be ameliorated or exonerated by the existence of additional delay of lesser weight. We offer an extreme hypothetical to illustrate the improper effect otherwise: a defendant seeking a speedy trial who initially experiences *six months* of negligent delay warranting only moderate weight against the state, then endures *five years* of complete inaction by the state in dereliction of its constitutional duty to bring the defendant to trial. In such a case, the initial six-month period of delay is ancillary to the critical analysis: is the state responsible for delay of sufficient length and culpability to constitute heavy weight of the factor? To be clear, a result of less-than-heavy weight would be error in the hypothetical if reached either through characterizing the range of the initial six-month and subsequent five-year periods of delay or through averaging the two periods; put simply, governmental delay that crosses such a factual threshold of length and degree warrants heavy weight of the reasons-for-delay factor against the state, and dissipation of that weight by *additional* delay is patently illogical.

{46}     In this vein, we also caution against the Court of Appeals' implicit consideration of an improper *offset* or *counterbalancing* proposition in concluding its reasons-for-delay analysis. The Court ended its weighing of the periods of delay by assessing two months of delay against Defendant, six neutrally, and twenty-eight against the State. Then, the Court closed by stating, "*Because the State's period of delay goes well beyond the others*, we conclude this factor in total weighs moderately to heavily against the State." *Schuster*, A-1-CA-40322, mem. op. ¶ 18 (emphasis added). This articulation directly implies that the Court's result in weighing the periods of delay would have been different if the twenty-eight months of State culpability had been exceeded in length by the delay attributable to Defendant or neutrally; implicitly, for example, thirty months of delay by Defendant or of neutral delay would have offset or counterbalanced the State's twenty-eight months of delay, thereby exonerating a blatant violation of the State's constitutional duty.

{47}     Nothing in *Barker* or its progeny directs application of an offset or counterbalancing proposition within the reasons-for-delay factor, and we caution lower courts against applying such a methodology. In the ultimate balancing of the four factors, *Barker* referred to factors on one side of the analysis "counterbalancing" factors on the other side, 407 U.S. at 534, as makes sense in any balancing test, but no such approach has been applied in this line of cases *within* the

reasons-for-delay analysis to mitigate or excuse governmental responsibility. We recognize that the *Doggett* Court paraphrased reasons-for-delay analysis as "whether the government or the criminal defendant is *more to blame* for that [uncommonly long] delay," but that was in the context of a single eight-and-a-half-year block of delay where the government's culpability for that single block was at issue. *See* 505 U.S. at 651-52 (emphasis added).

{48}     The reasons-for-delay factor "has been described as the focal inquiry in the speedy trial balancing test." *State v. Coffin*, 1999-NMSC-038, ¶ 60, 128 N.M. 192, 991 P.2d 477 (internal quotation marks and citation omitted). *Barker* instructs that to analyze this second factor, we consider "the reason the government assigns to justify the delay." 407 U.S. at 531. We interpret this to mean that the focus of the reasons-for-delay factor is to what degree, if any, the state bears responsibility for the pretrial delay. *See Serros*, 2016-NMSC-008, ¶ 26 ("A delay that crosses the threshold for presumptive prejudice necessarily weighs in favor of the accused; the only question is, how heavily?"). The focus of the second factor is not length-of-delay or the defendant's actions; these are the focus of factors one and three. While the other factors are "[c]losely related" to the reasons for delay, and extreme delay can increase the culpability of a party, *see Barker*, 407 U.S. at 531; *Zurla*, 1990-NMSC-011, ¶ 15, analysis of this factor should center on the length and degree of

delay at the hands of the state. Using methodologies that calculate the state's *relative* culpability—that effectively mitigate or even excuse the state's *actual* culpability— loses sight of the ultimate inquiry: was the state responsible for unconstitutional delay? We therefore abrogate any cases inasmuch as they improperly offset delay between the parties. *See, e.g., State v. Castro*, 2017-NMSC-027, ¶¶ 22-24, 402 P.3d 688; *State v. Brown*, 2017-NMCA-046, ¶ 28, 396 P.3d 171; *State v. Eskridge*, 1997-NMCA-106, ¶ 15, 124 N.M. 227, 947 P.2d 502.

## C. The Assertion-of-the-Right Factor Weighs Heavily Against the State

{49} In analyzing the third *Barker* factor, the Court of Appeals agreed with the district court that "Defendant adequately asserted his right to a speedy trial" but nonetheless did "not assign heavy weight to these [assertions]." *Schuster*, A-1-CA-40322, mem. op. ¶ 20. Citing precedent, the Court reasoned that less weight was warranted where (1) Defendant's assertions, other than the motion to dismiss, were pro forma and (2) "Defendant's written assertions and motion to dismiss were all filed within months of scheduled trials." *Id.* In other words, the Court assigned less-than-heavy weight to Defendant's assertions based on their lack of force and their proximity to trial. Under *Barker*, *Garza*, and *Ochoa*, we conclude the evidence supports heavy weight of this factor in Defendant's favor.

{50} The *Barker* Court adopted the assertion-of-the-right factor in significant part as a means to discern the legitimacy of a defendant's stated desire for a speedy trial, as this right—"generically different from any of the other rights enshrined in the Constitution for the protection of the accused"—may operate "in opposition to[] the interests of the accused." 407 U.S. at 519; *id.* at 521 ("[D]eprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic."). Thus, by adopting "the defendant's assertion of or failure to assert his right to a speedy trial" as a factor, the *Barker* Court recognized this approach "allows the trial court to exercise a judicial discretion based on the circumstances . . . [and] would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." *Id.* at 528-29. *Barker* thereby emphasized discretion and flexibility for courts in seeking to discern under its assertion-of-the-right analysis whether a defendant legitimately sought a speedy trial or was merely pursuing such a claim as a tactic. The *Barker* Court further stated that, because "[t]he more serious the deprivation, the more likely a defendant is to complain," an assertion of the right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531-32. Notably, the determinative consideration in *Barker* in rejecting the defendant's claim was evidence refuting the legitimacy of his assertions of the right: the defendant

initially acquiesced to delay—"[t]he probable reason" being his "gambling" on his codefendant's acquittal—and then began objecting to continuances only after the codefendant's conviction. *Id.* at 534-36 ("More important than the absence of serious prejudice[] is the fact that Barker did not want a speedy trial.").

{51}    *Garza* and *Ochoa* reflect this perspective on the role of the assertion-of-the-right factor under *Barker*, pointing to relevant considerations that may help a court in reaching an accurate assessment of the legitimacy of the defendant's stated desire for a speedy trial. In *Garza*, we explained that the timing and manner of a defendant's assertions of the right inform the "'frequency and force'" of such assertions as considered in *Barker*, and that "the defendant's actions with regard to the delay" may be relevant to the weight of this factor. *Garza*, 2009-NMSC-038, ¶ 32 (quoting *Barker*, 407 U.S. at 529); *see id.* ("[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as afterthought."). Following *Barker*, we read this guidance in *Garza* to direct that a defendant's acquiescence or contribution to delay may cast doubt on the legitimacy of the defendant's stated desire for a speedy trial.

{52}    Similarly in *Ochoa*, we reiterated "the importance of closely examining the circumstances of each case," including "a defendant's actions with regard to the

delay, such as filing frivolous motions or procedural maneuvers." 2017-NMSC-031, ¶ 42. In this vein, courts "also consider the consistency of a defendant's legal positions with respect to the delay," echoing the ultimate analysis and holding in *Barker* against the defendant. *Id.* On the other hand, such consistency of a defendant's legal position will be bolstered by numerous assertions, even if pro forma, as such assertions are nonetheless "entitled to *strong* evidentiary weight." *Barker*, 407 U.S. at 531-32 (emphasis added). So, while a pro forma speedy trial demand filed by defense counsel upon entering appearance is "afforded relatively little weight," *Urban*, 2004-NMSC-007, ¶ 16, consistent, "clear and repeated assertions throughout the entirety of [a] case" should be given more weight, even if pro forma, *Brown*, 2017-NMCA-046, ¶ 32 (internal quotation marks omitted) (citing *Serros*, 2016-NMSC-008, ¶ 77); *see Serros*, 2017-NMSC-008, ¶ 77 (holding that three pro forma assertions were entitled to weight); *see also Urban*, 2004-NMSC-007, ¶¶ 7, 16 (holding that a pro forma speedy trial demand, a pro se motion for speedy trial filed directly after arraignment, and a motion to dismiss for a speedy trial violation filed twelve days before trial weighed against the state); *State v. Montoya*, 2015-NMCA-056, ¶ 24, 348 P.3d 1057 (explaining that the defendant's pro forma demand for a speedy trial was not "insignificant in light of the overall circumstances [of the] case").

**{53}** We note, however, these considerations do not shift the state's burden. *Ochoa*, 2017-NMSC-031, ¶ 14 ("[T]he burden of persuasion rests on the [s]tate to demonstrate that, on balance, there was no violation of the right to a speedy trial." (citing *Garza*, 2009-NMSC-038, ¶ 22)).

**{54}** From these precedential perspectives, we glean an important principle: where the facts such as the force and frequency of the defendant's assertions establish the legitimacy of the defendant's stated desire for a speedy trial and where that conclusion is not refuted by contrary evidence, the critical inquiry in *Barker* is satisfied. In such a case, the factor should weigh heavily in favor of the defendant, rather than a court applying a hypertechnical standard that effectively underweighs a legitimate assertion of the right. *See Barker*, 407 U.S. at 531-32; *Garza*, 2009-NMSC-038, ¶ 32 (quoting *Barker*, 407 U.S. at 529); *Ochoa*, 2017-NMSC-031, ¶ 42; *see also* Seth Osnowitz, Note, *Demanding a Speedy Trial: Re-Evaluating the Assertion Factor in the* Barker v. Wingo *Test*, 67 Case W. Rsrv. L. Rev. 273, 295 (2016) ("Ambiguous standards for what constitutes a sufficiently vigorous or timely assertion—and the omnipresent argument of defendants acquiescing to delays—make the assertion[-of-the-right] factor an excuse for courts to unjustly refuse to dismiss cases.").

{55}     The dissent mistakes our clarification of precedent regarding the assertion-of-the-right factor as announcing a new rule which "overrules our precedent" by "assigning *heavy weight* to pro forma assertions" rather than "assigning [them] *little weight*." *Dissent* ¶¶ 115-16. This mischaracterization of our discussion above ignores the premise of our stated principle: while a *single* pro forma assertion of the right in isolation warrants only little weight under our precedent, a defendant's *collective* assertions—including pro forma assertions—should weigh heavily when their combined force and frequency indicate the legitimacy of the defendant's stated desire for a speedy trial, unless refuted by contrary evidence. As *Barker* made clear, the responsibility to convey such a desire with sufficient force and frequency rests with the defendant. 407 U.S. at 529, 532-33. Because Defendant's collective assertions demonstrate such sufficiency, we need not clarify the principle further.

{56}     Applied here, we agree with the district court that "Defendant . . . more than adequately asserted his speedy trial right in this case" through his six[4] assertions of the right, including his motion to dismiss. While Defendant's written demands for a speedy trial prior to the motion to dismiss were each a single-sentence assertion of

---

[4]While the Court of Appeals recognized five assertions in the record—"an oral demand at Defendant's arraignment, three written demands, and [the] motion to dismiss"—this count omits defense counsel's initial pro forma assertion in his entry of appearance in magistrate court. *Schuster*, A-1-CA-40322, mem. op. ¶ 20.

the right unaccompanied by further argument under the facts or legal authority, the limited force of these assertions individually does not end the analysis. First, *Barker* identified force *and* frequency as relevant considerations in assigning proper weight to this factor, without suggesting that imperfection in either consideration precludes the factor from weighing heavily. 407 U.S. at 529. The frequency of Defendant's assertions, including multiple assertions during the course of the unexplained continuances, support a conclusion that his stated desire for a speedy trial is legitimate. Stated differently, we conclude Defendant's six assertions over the span of this case refute the concern raised in *Garza* that a defendant may have raised the issue simply as an "afterthought." 2009-NMSC-038, ¶ 32. Second, this conclusion of legitimacy is bolstered by the substantial force of Defendant's motion to dismiss, and the cursory nature of the other written assertions, though relevant, does not undo the evidence supporting the conclusion. Third, the circumstances of this case, including Defendant's actions with regard to the governmental delay, include no contrary evidence to refute the legitimacy of his stated desire for a speedy trial. Accordingly, we disagree with the Court of Appeals' implicit determination that the weight of the factor should be diminished by *some* of Defendant's assertions lacking force because they were deemed pro forma; such an approach loses sight of the larger purpose of the factor analysis under *Barker*.

{57}    As to timeliness, on this record we cannot reduce the weight of Defendant's second, third, and fourth written assertions due to being filed close to scheduled trials considering they occurred within an almost uninterrupted pattern of monthly trial continuances. In other words, amid such a string of continuances—as discussed, sixteen between January of 2020 and February of 2022—how could a written demand for a speedy trial *not* fall "within months of scheduled trials"? *Schuster*, A-1-CA-40322, mem. op. ¶ 20. Accordingly, the timing of Defendant's written demands does not raise concerns that his stated desire was no more than a last-ditch stratagem as trial neared. *See, e.g.*, *State v. Laney*, 2003-NMCA-144, ¶ 24, 134 N.M. 648, 81 P.3d 591 ("Because [the d]efendant waited until the eleventh hour to specifically and meaningfully invoke a ruling on the speedy trial issue, we find this factor weighs only slightly in his favor.").

{58}    In sum, the frequency of Defendant's assertions and the force of his motion to dismiss support the legitimacy of his stated desire for a speedy trial, and apart from his initial sixty-day continuance pursuant to the preliminary examination,[5] nothing

---

[5]We note that neither the district court nor the Court of Appeals attributed significance to this initial continuance within their assertion-of-the-right analyses. To the extent those courts concluded this early continuance pursuant to the preliminary examination did not impugn the consistency of Defendant's assertion of the right otherwise, we agree.

in the record presents contrary evidence refuting that Defendant's stated desire to exercise his constitutional right was genuine. Further, we do not penalize the evidence supporting heavy weight of the factor based on the timing or manner of the assertions. Consequently, the critical inquiry for this factor is satisfied, and we weigh this factor heavily in Defendant's favor.

**D.      We Reverse Without Reaching Analysis of the Prejudice Factor**

{59}      As discussed, Defendant challenges the Court of Appeals' determination that Defendant did not show particularized prejudice, further asserting the Court of Appeals ignored its own precedent in concluding his claimed prejudice was not particularized.

{60}      Because we have held that each of the first three factors weighs heavily against the State, however, we need not reach prejudice analysis to conclude that Defendant's right to a speedy trial was violated. *Garza*, 2009-NMSC-038, ¶ 39. As we stated in *Zurla*:

> [W]hen the state unjustifiably has delayed a defendant's trial beyond a reasonable time, disregarding the defendant's demand for an early trial, undue emphasis should not be placed on whether the defendant is able to adduce evidence of identifiable prejudice. To hold otherwise would in effect attribute to this factor "talismanic qualities" antithetical to the understanding that animated *Barker*.

1990-NMSC-011, ¶ 35 (quoting *Barker*, 407 U.S. at 533). In articulating that heavy weight of the first three factors is dispositive, the *Zurla* Court cemented its rationale by quoting the concurrence in *Barker*:

> "A defendant desiring a speedy trial . . . should have it within some reasonable time; and only special circumstances presenting a more pressing public need with respect to the case itself should suffice to justify delay. Only if such special considerations are in the case and if they outweigh the inevitable personal prejudice resulting from delay would it be necessary to consider whether there has been or would be [particularized] prejudice."

*Zurla*, 1990-NMSC-011, ¶ 35 (quoting *Barker*, 407 U.S. at 537-38 (White & Brennan, JJ., concurring)). Echoing these considerations, we therefore reverse the Court of Appeals and remand to the district court for dismissal with prejudice.

{61}     **IT IS SO ORDERED.**

_____
**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____
**JULIE J. VARGAS, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**


**DAVID K. THOMSON, Justice,
dissenting**


**BRIANA H. ZAMORA, Justice,
dissenting**

**THOMSON and ZAMORA, Justices (dissenting).**

{62}    "The heart of the right to a speedy trial is preventing prejudice to the accused." *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387. Thus, in speedy trial cases, we do not forego an analysis of prejudice against the defendant absent specific circumstances. Because those circumstances are not present here and because Defendant did not show any prejudice to him, the Court of Appeals was correct in reversing the dismissal of Defendant's case. Accordingly, we respectfully dissent.

{63}    To determine whether a defendant's speedy trial right was violated, "we consider the four factors articulated in *Barker* [*v. Wingo*, 407 U.S. 514, 530 (1972)]: (1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay" (the *Barker* factors). *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "We weigh these factors according to the unique circumstances of each case in light of 'the [s]tate and the defendant's conduct and the harm to the defendant from the delay.'" *Id.* (quoting *Garza*, 2009-NMSC-038, ¶¶ 12-13). "None of the[] factors are dispositive, and no single factor alone is necessary or sufficient." *State v. Gurule*, 2025-NMSC-010, ¶ 11, 563 P.3d 775. "[M]erely showing delay in bringing an accused's case to trial is not enough to

establish a speedy trial violation; rather, we must scrutinize every claimed violation to determine whether the accused has suffered an 'actual and articulable deprivation' of the right to a speedy trial." *Serros*, 2016-NMSC-008, ¶ 4 (quoting *Garza*, 2009-NMSC-038, ¶¶ 12-13).

{64} This Court has written at length about the particularized prejudice required to establish a speedy trial violation and has concluded that in cases where the first three *Barker* factors weigh heavily against the state, the defendant need not show particularized prejudice. *Garza*, 2009-NMSC-038, ¶ 39. The majority erroneously expands the bounds of what we have previously weighed heavily against the state by concluding that a sufficiently long delay may itself constitute bureaucratic indifference such that the second factor is also weighed heavily against the state. *Maj. op.* ¶¶ 28-30, 45. This represents a consequential shift in our speedy trial law that effectively conflates the first two *Barker* factors and risks violating an essential holding of *Barker*: that "none of the four factors . . . [is] either a necessary or sufficient condition to the finding of a depravation of the right of speedy trial." 407 U.S. at 533. The majority then places further weight on the merged first and second factor by treating the third factor as a mere formality. *Maj. op.* ¶¶ 49-54. The ease with which defendants may now avoid having to show actual and particularized prejudice is antithetical to the purpose of our speedy trial jurisprudence. The

majority permits dismissal of cases without consideration of whether there is prejudice of the kind the speedy trial right was intended to protect against. *See Garza*, 2009-NMSC-038, ¶ 37 (holding that the speedy trial right does not protect against nonparticularized prejudice).

{65} We examine the majority's mischaracterizations of our speedy trial jurisprudence and assess the facts before us in light of a proper reading of the *Barker* factors. In doing so, we conclude that Defendant's speedy trial right was not violated. Accordingly, we would affirm the Court of Appeals ruling.

## I.   DISCUSSION

## A.   Length of Delay

{66} As a preliminary matter, we describe the uncontested conclusion of the majority regarding the first factor, the length of the delay. "The first factor is 'a triggering mechanism,' which starts an 'inquiry into the other factors that go into the balance.'" *Gurule*, 2025-NMSC-010, ¶ 12 (quoting *Barker*, 407 U.S. at 530). Any delay longer than a year for a simple case is presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶ 47. Defendant's trial was delayed for over three years. This delay thus "crosses the threshold for presumptive prejudice [and] necessarily weighs in favor of the accused." *Serros*, 2016-NMSC-008, ¶ 26. Both parties agree that this factor weighs heavily against the State, and the first factor is not at issue.

**B.      Reasons for Delay**

{67}      The second factor in the *Barker* analysis requires a court to evaluate "'the reason the government assigns to justify the delay.'" *Garza*, 2009-NMSC-038, ¶ 25 (quoting *Barker*, 407 U.S. at 531). "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* (internal quotation marks and citation omitted). Where the state has deliberately delayed the trial to hamper the defense, the second factor should weigh heavily against the state. *Serros*, 2016-NMSC-008, ¶ 29. "[N]egligent or administrative delay . . . should be weighted less heavily but nevertheless . . . must rest with the government rather than with the defendant." *Garza*, 2009-NMSC-038, ¶ 26 (internal quotation marks omitted) (quoting *Barker*, 407 U.S. at 531). Valid reasons, which justify delay, should not weigh against either party. *Barker*, 407 U.S. at 531. Finally, "delay caused by the defense weighs against the defendant." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

{68}      While we largely agree with the majority and the Court of Appeals' division of the delay in this case into periods of time, we make one clarification.

{69}      The Court of Appeals and the majority list the second period, Period B, as June 15, 2019, to March 16, 2020, nine months, and weigh this delay slightly against the State. *State v. Schuster*, A-1-CA-40322, mem. op. ¶¶ 10-11 (N.M. Ct. App. Apr.

10, 2024) (nonprecedential); *maj. op.* ¶ 14. However, doing so ignores that on January 6, 2020, the district court held a docket call and Defendant did not appear. Because Defendant did not appear, the district court put Defendant on a trailing docket and set another docket call for March 2, 2020, two months later, where the State acknowledged that it would not be ready for trial because it had not received results from the drug testing laboratory. These two months should be weighed against Defendant, and not the State, as it was his failure to appear that caused the delay.

**1.      The correct timeline**

{70}     March 8, 2019, to June 14, 2019, three months. This case was before the magistrate court. Two months of this time is attributable to Defendant because he requested an extension; the remaining month is attributable to the State as administrative delay.

{71}     June 15, 2019, to January 6, 2020, seven months. We concur with the Court of Appeals that this period amounted to negligent delay and should weigh only slightly against the State. *Schuster*, A-1-CA-40322, mem. op. ¶¶ 10-11.

{72}     January 6, 2020, to March 2, 2020, two months. Defendant failed to appear at the docket call on January 6, 2020, so the district court placed Defendant on a trailing

docket with a new docket call two months later. Because Defendant failed to appear, these two months should weigh against Defendant.

{73}     March 2, 2020, to March 17, 2020, two weeks. At the docket call on March 2, 2020, the State acknowledged that it would not be ready for trial because it had not yet obtained lab results for the controlled substance found in Defendant's possession during his arrest. Then on March 17, 2020, this Court suspended all jury trials. *See* Order, No. 20-8500-002, at 3 (N.M. Sup. Ct. Mar. 17, 2020). The delay here was administrative, and these two weeks should weigh slightly against the State.

{74}     March 17, 2020, to July 15, 2020, four months. During this period, this Court suspended jury trials due to the COVID-19 pandemic. *See id.*; Order, No. 20-8500-013, at 2 (N.M. Sup. Ct. Apr. 16, 2020); Order. No. 20-8500-020, at 1 (N.M. Sup. Ct. May 28, 2020). This four-month delay should not weigh against either party. Because the district court had not set a new trial date, on June 12, 2020, the State filed a request for a new scheduling order. On June 18, 2020, the district court rescheduled the trial for September 28, 2020. On July 15, 2020, Defendant filed his third demand for a speedy trial.[6]

---

[6]Defendant erroneously titled his third demand "Second Demand for Speedy Trial."

{75} July 16, 2020, to November 15, 2020, four months. During this period, the district court sua sponte rescheduled Defendant's trial once on September 14, 2020, putting him on a trailing docket for November 2020. There were no requests for continuances filed by either party during this period. This was an administrative delay, and these four months should weigh only slightly against the State.

{76} November 16, 2020, to January 1, 2021, one month and two weeks. During this period this Court again suspended all jury trials due to the COVID-19 pandemic. *See* Order, No. 20-8500-039, at 16 (N.M. Sup. Ct. Nov. 13, 2020). On November 19, 2020, the district court put Defendant on a trailing docket set for January 25, 2021. This delay should not weigh against either party.

{77} January 2, 2021, to February 28, 2022, fourteen months. Over this period the district court sua sponte rescheduled trial eleven times, each time without any explanation. No continuances were requested by either party during this time; the entirety of the delay was caused by the district court's rescheduling. Aside from the scheduling orders, the record contains very little during this time. The State amended its witness list and substituted counsel. Defendant filed two more demands for speedy trial, both one sentence long and identical in substance to the "Second Demand for Speedy Trial."

{78} The final amended scheduling order, filed on February 15, 2022, set a docket call for February 28, 2022, and trial for March 21, 2022. At the docket call, the district court judge noted that the State had not subpoenaed any witnesses yet. The State conceded that it had not subpoenaed its witnesses but said that it would nevertheless be ready for trial on March 21, 2022, as scheduled. The State needed only two witnesses, one from the local police department and one from the state forensic lab. There were still three weeks before the scheduled trial date, enough time for the State to issue its subpoenas. *See* Rule 5-511(C)(3)(a)(i) NMRA (requiring that subpoenas "allow reasonable time for compliance"). Despite the State's readiness for trial, the majority faults the State for not having subpoenaed its witnesses at this point. *Maj. op.* ¶ 18. The State indicated its own frustration, suggesting it was hard to contact witnesses when it did not know which cases were going to trial.

{79} Also at the docket call, Defendant for the first time suggested that he would move to dismiss on speedy trial grounds if the case did not go to trial as scheduled. Despite there being no indication that trial would not be going forward as scheduled, Defendant filed his motion to dismiss on March 4, 2022.

{80} Given that the delay in this case attributable to the State is almost entirely administrative, we would weigh this factor moderately against the State. The

majority weighs this factor heavily against the State, but its reasons for doing so are not supported either by law or by evidence in the record. *Maj. op.* ¶ 26. The majority erred in assigning heavy weight to delay that was almost entirely administrative and in refusing to weigh any delay against Defendant.

{81}     The majority rests most of its analysis of this factor on two separate bases, both of which it claims require weighing the factor heavily against the State: (1) that "the State's protracted delay . . . constituted bureaucratic indifference" rather than negligent or administrative delay and (2) the district court's finding that there was a "prosecutorial policy of taking every case to trial and offering pleas without favorable terms—a policy recognized by the district court as effecting systemic delay in Colfax County." *Maj. op.* ¶ 26. However, neither of these bases is supported by the record before us, and the weight assigned to them does not comport with our speedy trial precedent. We address each in turn.

**2.     The distinction between negligent delay and bureaucratic indifference**

{82}     In *Zurla v. State*, 1990-NMSC-011, 109 N.M. 640, 789 P.2d 588, we clarified that negligent delay is "a 'more neutral reason' that, along with excessive caseload, weigh[s] 'less heavily' against the state than intentional delay." *Id.* ¶ 14 (quoting *Barker*, 407 U.S. at 531). However, we also noted that simply labeling a delay "negligent" is insufficient to fix the weight at a lower level and sought to distinguish

between "bureaucratic indifference" and "case overload." *Id.* ¶¶ 14-16. We explained that the state's failure to act "despite the availability of necessary administrative machinery" amounted to bureaucratic indifference which should be weighed "more heavily" against the government. *Id.* ¶¶ 15-17. This distinction is important given that we place a heavier weight on bureaucratic indifference and a lighter weight on negligent delay or case overload.

{83}     The majority elides the distinction between bureaucratic indifference and negligent delay, apparently based on the length of delay. *Maj. op.* ¶ 28. Though the majority correctly notes that the weight against the state for negligent delay increases with the length of delay, it goes beyond our current precedent when it relies on *Zurla* to assume that a longer period of administrative negligence is equivalent to bureaucratic indifference. *Maj. op.* ¶ 28. *Zurla* provides that bureaucratic indifference occurs when resources are available to move towards trial but those resources go unused—it does not provide that a longer delay is presumptively bureaucratic indifference. 1990-NMSC-011, ¶ 15. The majority compounds its error by presuming that bureaucratic indifference must be weighed heavily against the state, when *Zurla* simply provides it must be weighed "more heavily" than mere negligence. *Id.* ¶ 16; *maj. op.* ¶ 28.

{84} The remaining decisions cited by the majority show that we typically do not hold that a delay becomes bureaucratic indifference and weigh it heavily against the state unless there is an available action the state failed to take during that time. In all of the cases cited by the majority, there was specific action that the state could have taken to move the case forward. *See Zurla*, 1990-NMSC-011, ¶ 15 ("The state failed to inquire as to Zurlas's whereabouts."); *State v. Palacio*, 2009-NMCA-074, ¶¶ 14-17, 146 N.M. 594, 212 P.3d 1148 (explaining that the state failed to take action to obtain custody of the defendant after being notified of his whereabouts); *Doggett v. United States*, 505 U.S. 647, 652-53 (1992) (noting that investigators did not take action to locate the defendant); *State v. Moore*, 2016-NMCA-067, ¶ 14, 378 P.3d 552 (classifying delay as bureaucratic indifference when the state took eight months to respond to a demand for discovery and to file an indictment in district court); *State v. Taylor*, 2015-NMCA-012, ¶¶ 12-17, 343 P.3d 199 (weighing the reason for delay heavily against the state when the state failed to request a trial setting or otherwise take action to move the case forward as it was pending without a trial date); *State v. Stock*, 2006-NMCA-140, ¶¶ 20, 25, 140 N.M. 676, 147 P.3d 885 (holding that the state should have done something to "ascertain what was happening in the case or to move the case forward" during a delay caused by competency evaluations that were either incomplete or unreported to the state). *But see State v. Castro*, 2017-NMSC-

027, ¶ 23, 402 P.3d 688 (weighing a period of fifteen months "in which the case languished with virtually no activity . . . only slightly against the [s]tate"); *State v. Ochoa*, 2017-NMSC-031, ¶ 23, 406 P.3d 505 (weighing a seventeen-month delay only slightly against the state because it was "caused by negligent or administrative reasons").

{85} Here there is no action the State failed to take. When the trial was continued without a new date, the State requested a scheduling order. Then, the district court rescheduled the trial almost every month, often placing the case on a trailing docket. For over a year, as far as the State knew, this case was going to trial, and the State needed only to be prepared to go to trial when it was scheduled. When there was finally a docket call, the State said it would be ready for trial as scheduled. The delay was almost entirely caused by a congested docket and therefore should weigh only slightly against the State. *See Gurule*, 2025-NMSC-010, ¶ 24 ("Mere negligence or administrative delays weigh less heavily against the state." (citing *Serros*, 2016-NMSC-008, ¶ 29)); *Ochoa*, 2017-NMSC-031, ¶ 18 ("[N]egligent or administrative delay weighs less heavily . . . against the [s]tate."); *Barker*, 407 U.S. at 531 ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily.").

{86}     The majority itself notes that the delay here was based in part on a congested trial docket. *Maj. op.* ¶ 36. This is precisely the sort of "negligent delay" that *Zurla* notes is distinct from "bureaucratic indifference." 1990-NMSC-011, ¶¶ 14-16 (noting that "negligent delay . . . along with excessive caseload, weigh[s] 'less heavily' against the state than intentional delay" before distinguishing that the instant case was of bureaucratic indifference rather than negligent delay (quoting *Barker*, 407 U.S. at 531)). The majority conflates the two and assumes that a sufficiently *protracted* delay necessarily creates bureaucratic indifference and that bureaucratic indifference necessarily weighs heavily against the state. This is a mischaracterization of *Zurla* that eliminates the lines between *Barker* factors one and two. It also provides an easier path for defendants to avoid showing particularized prejudice by heavily weighing the *reason* for delay against the state when the *length* of delay is sufficiently long. Finally, it fails to provide guidance to lower courts as to when delay is so long as to become bureaucratic indifference that weighs heavily against the state. *See Barker*, 407 U.S. at 521-22 (explaining that the right to a speedy trial is a "vague concept" and it is "impossible to determine with precision when the right has been denied"); *Garza*, 2009-NMSC-038, ¶ 9 (holding that a "bright-line rule" is "contrary to the purpose of the speedy trial right").

### 3. Prosecutorial policy as a reason for delay

{87}   The majority's second basis for weighing the reasons for delay factor heavily against the State was the district court's finding that the congested docket was the result of "the relevant prosecutorial 'policy of prosecuting all types of cases to the fullest extent and offering plea agreements that provide relatively little benefit to defendants.'" *Maj. op.* ¶ 35. This is an error for two reasons: First, the majority wholeheartedly accepts the district court's findings with no evidentiary basis, and in doing so creates a novel—and unbriefed—legal concept in New Mexico: implied judicial notice. Second, the majority endorses an improper exertion of influence over prosecutorial discretion.

### a. There is no evidentiary support for the existence of the prosecutorial policy relied on by the majority

{88}   The majority is correct; the factual findings of a district court in a speedy trial claim are entitled to deference. *Maj. op.* ¶ 35 (citing *Serros*, 2016-NMSC-008, ¶ 20). However, they still must be supported by evidence in the record. *See State v. Thomas*, 2016-NMSC-024, ¶ 11, 376 P.3d 184 (deferring to the district court's findings "when that 'finding is supported by substantial evidence'" (brackets and ellipsis omitted) (quoting *State v. Manzanares*, 1996-NMSC-028, ¶ 9, 121 N.M. 798, 918 P.2d 714)). Here, there is no support for the district court's findings in the record and no suggestion by anyone other than defense counsel that such a policy existed.

The majority's adoption of the district court's finding without evidentiary support is error.

{89}    The district court's findings of fact about the State's alleged plea policy were based on a discussion initiated by the district court at the hearing on Defendant's motion to dismiss. The majority refers to "extensive discussion" at the hearing. *Maj. op.* ¶ 36. It specifically refers to the district court judge's comments that there was an extraordinary backlog of cases and that she attributed the backlog to the prosecutor's office. *Maj. op.* ¶ 36. While we are sympathetic to the difficulties such a backlog creates, we simply cannot base our speedy trial analysis on the comments of a district court judge and defense counsel that are not supported by any evidence in the record. The majority's concern that "the existence and effect of the prosecutorial policy at issue was not meaningfully rebutted by the State at the hearing" is irrelevant to determining whether or not such a finding was supported by evidence. *Maj. op.* ¶ 36. Nor is the majority's assertion accurate, as the prosecutor said that her case load had decreased in the years since she started in the district, gave examples of cases in which she employed strategies to triage her caseload, and suggested actions the court could take to help reduce the number of cases on the docket.

{90}    At the hearing, there was no evidence presented. No witnesses were put on; no evidence was offered into the record. The hearing did not begin with the district court judge listening to arguments from counsel about whether Defendant's speedy trial right was violated. Instead, the hearing began with the district court judge inquiring about the State's plea offer, asking the prosecutor if the State offered Defendant preprosecution diversion or a misdemeanor plea, and then following up with questions about the plea the State offered in the case. The district court judge described the charges and commented on whether one of the charges had a "factual basis." After the prosecutor summarized the plea that was offered, the district court judge improperly began to "analyze the plea offer in this case." The district court judge considered Defendant's prior conviction, commented on whether one of the counts would make it through a directed verdict, and compared the plea offer to what Defendant might face based on what she thought the outcome at trial would be. She concluded by saying that "analyzing the plea that was offered, it's not, it's not a great plea," and suggesting that if the State were faced with the consequence of losing cases if they did not reach trial within a year, it might start offering better pleas. The district court judge went on to describe the backlog of cases the court faced and suggested that the State do "something more . . . than offer sort of a lukewarm plea agreement."

{91} Throughout the hearing, the only person who mentioned any "policy" that the State operated under was defense counsel. Defense counsel said, "there is a history of [the State] just prosecuting everything from misdemeanors, petty misdemeanors, all the way up" and, comparing that to Taos, "It's the eighth judicial district's policy; that's just not the policy in Taos." Later he said, "I just don't buy this argument that the State doesn't know what to do, that they're bound by some policy, that they're locked in by their district attorney head, that they have this directive to move forward, and that there cannot be fair pleas or pleas that maybe are not fair—that maybe even benefit the defendant sometimes—to try to get things resolved." This, of course, is not evidence. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("[A]rguments of counsel are not evidence." (internal quotation marks and citation omitted)). Despite there being no evidentiary support in the record, the majority improperly adopts the district court's finding that the policy existed and in doing so incorporates a court's *opinion* about how a prosecutor's office should operate into a *finding* that impacts a speedy trial analysis.

**b.    Our rules of evidence do not provide for taking judicial notice by implication**

{92} The majority acknowledges the "limited" evidentiary value of the hearing at issue, but it maintains that the prosecutorial policy that caused the delay was established in the record because the district court, under Rule 11-201 NMRA,

"implicitly took judicial notice of facts sufficient to establish the relevant policy." *Maj. op.* ¶ 38. This expansive interpretation of judicial notice requirements is not supported by our rules of evidence or this Court's precedent.

{93} Rule 11-201(B)(1)-(2) provides for district courts to take judicial notice of facts where those facts are "generally known within the court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." This Court construes Rule 11-201 to preclude judicial notice of any facts or matters that are uncertain or "subject to reasonable dispute." *See State v. Ortiz*, 2023-NMSC-026, ¶ 25, 539 P.3d 262. "When a court takes judicial notice of a fact, it must be done on the record." *City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 7, 147 N.M. 693, 228 P.3d 477. A proper record of judicial notice will "establish on the record how [the matter] is the subject of common and general knowledge or is well established and settled." *See Ortiz*, 2023-NMSC-026, ¶ 26. We require courts to be explicit in taking judicial notice because it facilitates appellate review, and it provides notice to the opposing party, as due process requires. *Id.* ¶ 25.

{94} The majority eschews our jurisprudence by permitting, for the first time, judicial notice *by implication*. *See maj. op.* ¶ 38. Neither party—certainly not Defendant—asked for or briefed the issue. Despite that, the majority now permits

taking judicial notice (1) without notice to the parties and (2) without a record explaining how the general knowledge is established. The problems intrinsic with taking judicial notice by implication are on full display here where the State was given no notice that prosecutorial policies would be at issue in the hearing, and the appellate courts are now left to review a ruling with an uncertain factual basis that appears to be based on the opinions and anecdotes of the district court and defense counsel. Even if there were proper notice and a record of the matter, the prosecutorial policy alleged here would still not meet the requirements for judicial notice.

{95}    For a court to take judicial notice of a matter, it "must be a subject of common and general knowledge . . . that is well established and authoritatively settled." *Ortiz*, 2023-NMSC-026, ¶ 25 (internal quotation marks and citation omitted). Our courts have not historically read this requirement broadly. *See, e.g.*, *Hartford Accident & Indem. Co. v Beevers*, 1972-NMCA-107, ¶¶ 13-17, 84 N.M. 159, 500 P.2d 444 (upholding the district court's refusal to take judicial notice of the "laws of nature" concerning combustible gases (internal quotation marks omitted)), *State v. Torres*, 1999-NMSC-010, ¶ 42, 127 N.M. 20, 976 P.2d 20 (holding that it would be inappropriate to take judicial notice of the evidentiary reliability of horizontal gaze nystagmus field sobriety testing because its evidentiary value was not "well established and authoritatively settled" (internal quotation marks omitted)). Yet the

majority stretches the bounds of "common and general knowledge," *Ortiz*, 2023-NMSC-026, ¶ 25, to include a subjective view of the plea deals being offered in the county. The only relevant plea deal was the one Defendant rejected, and whether this plea offered a sufficient benefit to Defendant is "subject to reasonable dispute"—not a matter of common knowledge. *Id.* The district court's assertion that there was a prosecutorial policy of making "lukewarm" plea offers also has no clear basis in the record that would make it a "well established" fact. *See id.* These unsupported evidentiary findings are now being given the weight of "judicial notice." *Maj. op.* ¶ 38. We cannot support the majority's creation of a new category of judicial notice which permits courts to insert their opinions as facts of the case with no record to support their findings.

c.     **Prosecutorial policy only factors into a speedy trial analysis when it is directly at issue**

{96}     In addition to there being no factual basis for the findings regarding the prosecutorial policy at issue, the alleged policy should not be part of a speedy trial analysis at all unless it is directly at issue. The majority points to the county's alleged plea policy to justify weighing the reasons-for-delay factor heavily against the State. *Maj. op.* ¶ 35. It cites *Serros*, in which this Court recognized that a prosecutorial policy had contributed to a delay in trial. 2016-NMSC-008, ¶¶ 71, 73. In *Serros*, however, the policy was directly at issue in the case. The policy, which required the

state to try to negotiate a plea before allowing the defense to interview the victim in a sexual abuse case, was first mentioned by the state during a cross-examination. *Id.* ¶ 71. Two of the defendant's attorneys said they had been unable to interview witnesses because of this policy, and ultimately the defendant was never able to "interview the critical witnesses in his case." *Id.* ¶ 72.

{97} The policy at issue in *Serros* is distinguishable from the alleged plea policy in this case. In *Serros*, the policy actively inhibited the defendant's ability to put on a defense by limiting his access to witnesses. *Id.* ¶¶ 71-73. "The [s]tate acknowledged that it had prevented [defense counsel] from interviewing the victim while [the d]efendant's speedy trial motion was pending." *Id.* ¶ 71. The state in *Serros* actively took steps in conformity with its policy that delayed the trial in that case. Here, to the extent such a plea policy existed at all, there is nothing in the record to show that the policy delayed this case beyond the alleged systemic issues. A criminal defendant has every right to decline a plea deal and go to trial; however, where an overcrowded docket leads to delay in that trial, it should not be weighted heavily against the state as evidence that the plea deal was not good enough.

{98} By adopting the findings of the district court regarding this alleged plea policy, the majority would permit a court to comment on prosecutorial plea policies,

regardless of the applicability of the plea policy to the case at hand. This risks judicial intrusion upon prosecutorial discretion.

{99} Prosecutors, operating under the executive, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring. *See, e.g., State v. Ogden*, 1994-NMSC-029, ¶ 20, 118 N.M. 234, 880 P.2d 845 ("[P]rosecutorial discretion in charging is quite broad . . . . '[S]o long as the prosecutor has probable cause . . . the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.'" (second alteration in original) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985))). Prosecutorial discretion extends to the process of plea bargaining. *See State v. Estrada*, 2001-NMCA-034, ¶ 20, 130 N.M. 358, 24 P.3d 793 ("[A] criminal defendant has no constitutional right to a plea bargain, and the decision whether to offer a plea bargain is a matter within the prosecutor's discretion."); *State v. Barnett*, 1998-NMCA-105, ¶ 22, 125 N.M. 739, 965 P.2d 323 (describing a prosecutor's discretion in plea bargaining as "tremendous").

{100} The prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607. Indeed, the prosecution's authority in this regard is founded, among

other things, on the principle of separation of powers and generally is not subject to supervision by the judicial branch. N.M. Const. art. III, § 1 ("The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others.").

{101} The district court judge here raised issues pertaining to countywide prosecutorial plea policy by interrogating an assistant district attorney on matters entirely unrelated to Defendant. The judge raised issues of plea offers and the backlog of court cases and ultimately issued an order dismissing the case which blamed the delay on "prosecutors who have worked in Colfax County over the last five years or more" for creating an "untenable bottleneck" without regard for the "administration of justice." This attempt by the judiciary to steer prosecutorial practice violates the constitutional safeguard provided by the separation of powers, an outcome now endorsed by the majority in this case.

{102} We are likewise walking a dangerous line when judges get involved in plea negotiations, comment on a case before it is tried, and comment on whether a plea offer is good or not. Not only is this not a proper basis for a finding that the state is operating under an alleged plea policy, it is improper commentary from a district

court judge and against our rules of criminal procedure. *See* Rule 5-304(A)(1) NMRA ("A judge who presides over any phase of a criminal proceeding shall not participate in plea discussions."); Rule 5-304(G) ("Evidence of a plea of guilty, later withdrawn, a plea of no contest, or of an offer to plead guilty or no contest to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer."); Rule 5-304 comm. cmt. ("By the adoption of this rule, the Court specifically eliminated all judicial involvement in the plea bargaining discussions.").

{103} Application of a specific prosecutorial policy in a case, when in evidence, may indeed be weighed against the state. However, the majority takes this too far by permitting a broad prosecutorial plea policy to factor into a speedy trial analysis. We cannot concur in an opinion that opens the door to the judiciary improperly commenting on plea deals and curtailing prosecutorial discretion.

**4.      Defendant's role in the reasons for delay factor**

{104} The majority abrogates a broad swath of cases by concluding that the reasons-for-delay inquiry must "center on the length and degree of delay at the hands of the

state."[7] *Maj. op.* ¶ 48. This approach is not supported by our precedent and further collapses the first and second factors.

{105}   The majority would have courts confine analysis of a defendant's actions to our assertion-of-the-right inquiry. *Maj. op.* ¶ 48. The majority relies on *Barker* and *Serros* for this conclusion, but it ignores the progeny of *Barker* and even the underlying rationale of *Serros. Maj. op.* ¶ 48. When the United States Supreme Court first announced in *Barker* that it was adopting a new approach to the speedy trial inquiry, it described the approach as a balancing test in which "the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 530. Later, in *Brillon*, the United States Supreme Court clarified that asking "'whether the government or the criminal defendant is more to blame for the delay,'" is necessary to avoid rewarding the use of delay as a defense strategy. 556 U.S. at 90 (brackets omitted) (quoting *Doggett*, 505 U.S. at 651). The Court further provided that "delay caused by the defense weighs against the defendant." *Id.* In *Serros*, this Court cited both *Barker* and *Brillon* to determine whether to attribute any of the reasons for delay to

---

[7]In doing so, the majority does what the minority could not do in *Gurule*, a contested and split decision in which the minority similarly suggested the state's actions should be the sole focus of the length-of-delay analysis, regardless of a defendant's actions. 2025-NMSC-010, ¶ 87 (Bacon, C.J., dissenting). Without mentioning *Gurule*, the majority here attempts to overrule it, with no stare decisis analysis.

the defendant. 2016-NMSC-008, ¶¶ 38-47. While the *Serros* Court ultimately found that the defendant should not be held accountable for any of the delay, the opinion did not foreclose the possibility that a defendant's behavior should be considered in assessing this factor. *Id.* ¶¶ 44-66. Indeed, it defies logic that we would have considered whether to attribute delay to the defendant if such an attribution would have been error. Further, the Court in *Serros* explicitly provides an "approach for determining whether the reasons for the delay in such a case should weigh against a defendant or the [s]tate." *Id.* ¶ 43. We therefore see no basis in our case law for excluding a defendant's behavior from assessment of the reasons for delay and note that this dramatic change is made without any consideration of stare decisis. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 11, 127 N.M. 654, 986 P.2d 450 (noting that departure from precedent requires special justification).

{106} Excluding the defendant's behavior entirely results in the absurdity that intentional delay by a defendant could not be weighed against a defendant. This approach also cements the collapse of the second factor into the first by removing any possibility that the second factor could be balanced based on the state's and defendant's actions. Instead, sufficient delay weighs the first factor against the state, and courts may look only to the state's conduct for the second factor. When combined with the holding that administrative delay can be construed as heavily

weighted bureaucratic indifference, the second factor now appears to be a mere formality. We cannot agree with this approach.

{107} According to our analysis, twenty-seven-and-a-half months of delay weigh against the State as resulting primarily from a congested docket and other administrative reasons, four months weigh against Defendant, and five-and-a-half months weigh against neither party. Because the reasons for delay are weighed more heavily against the state as the length of the delay increases, we would weigh this factor moderately against the State. There is nothing in the record to indicate that the State at any point intentionally delayed trial in this case, and there is nothing in the record to indicate that the State failed to take steps to move the case forward. The entirety of the State's delay is properly classified as administrative, mostly due to a congested docket. A delay due to a congested docket does not weigh heavily against the state. *See, e.g.*, *Zurla*, 1990-NMSC-011, ¶¶ 14, 16; *Barker*, 407 U.S. at 531. The *Barker* Court acknowledged that delays are inevitable in some cases and, for that reason, held that administrative delays, including those due to congested dockets, should weigh less heavily against the state. 407 U.S. at 522 ("The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." (internal quotation marks and citation omitted)); *id.* at 531 ("A more neutral reason [for delay] such as negligence or overcrowded courts should be

weighted less heavily [against the government].”). Accordingly, we would weigh this factor moderately against the State.

**C.      Assertion of the Right**

{108}    The third *Barker* factor considers a defendant’s assertion of the right to a speedy trial, assigning weight based on “‘[t]he timeliness and vigor with which the right is asserted.’” *Serros*, 2016-NMSC-008, ¶ 76 (quoting *Garza*, 2009-NMSC-038, ¶ 32). “The frequency and force of the objections can be taken into account in considering the defendant’s assertion, as well as whether an assertion is purely pro forma.” *Ochoa*, 2017-NMSC-031, ¶ 41 (citing *Barker*, 407 U.S. at 529). “Pro forma assertions are sufficient to assert the right, but are given little weight in a defendant’s favor.” *Id.* (citing *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061).

{109}    Here, Defendant made six total assertions of his right to a speedy trial during the thirty-six months of delay. First, defense counsel included a demand for a speedy trial in his initial appearance in magistrate court. This was a pro forma demand, the kind which most defense attorneys include in their entry of appearance in every case. Next, Defendant made an oral demand at his arraignment, asking that the case be classified as simple and that trial be scheduled as soon as possible. Then, on July 15, 2020, one year after Defendant was arraigned, he filed his “Second Demand for

Speedy Trial." Thirteen months later, on August 31, 2021, he filed his "Third Demand for Speedy Trial," and on January 5, 2022, his "Fourth Demand for Speedy Trial." Each of these three demands was filed during the period wherein the district court was sua sponte resetting the trial date without explanation. All three demands were pro forma; the body of the demand was exactly the same in each filing and read in its entirety:

> COMES NOW, the Defendant BRYAN SCHUSTER, by and through his attorney, Ben. A Mondragon, and hereby request a second [sic] demand for a speedy trial as guaranteed to him by the Constitution of the United States and by the State of New Mexico Constitution in the above – entitled and numbered case.

{110}   These demands are pro forma. There is no argument, no factual basis for the demand, no explanation as to why he wanted a speedy trial, no discussion of how he was being prejudiced by the delay, and no citation to law beyond the vague assertion of his constitutional right to a speedy trial. While each of these demands was alone sufficient to assert the right, they did not, even taken together, carry such force that we would weigh this factor heavily against the State. *See Gurule*, 2025-NMSC-010, ¶ 39 ("'[P]ro forma motions are generally afforded relatively little weight in this analysis.'" (quoting *Urban*, 2004-NMSC-007, ¶ 16)); *Serros*, 2016-NMSC-008, ¶ 77 (holding that three pro forma assertions were "entitled to some weight").

{111} Defendant's sixth and final assertion of the right was a motion to dismiss for a violation of his speedy trial right. Defendant filed his motion on March 4, 2022, four days after the docket call at which the State said it would be ready for trial as scheduled on March 21, 2022. At the docket call, defense counsel said that they would file a motion to dismiss on speedy trial grounds if the trial did not go forward as scheduled; however, there is nothing in the record indicating that the trial would not have gone forward as scheduled.

{112} Unlike Defendant's other demands, the motion was not pro forma. Defendant gave grounds in support of his motion including a summary of the proceedings thus far, citation to relevant caselaw, and analysis of the *Barker* factors. But it came on the eve of trial, after a docket call at which both parties said they would be ready to proceed to trial in three weeks. *Gurule*, 2025-NMSC-010, ¶ 39 ("[T]his Court recognizes that the closer to trial an assertion is made, the less weight it is given." (internal quotation marks and citation omitted)).

{113} Ultimately, Defendant's assertions of the right were such that this factor should only weigh slightly against the State. This Court analyzes the assertion of the right factor in terms of the frequency and force of a defendant's assertion, consistent with *Barker*. *Garza*, 2009-NMSC-038, ¶ 32 ("[W]e accord weight to the 'frequency and force' of the defendant's objections to the delay." (quoting *Barker*, 407 U.S. at

529)). Pro forma assertions, while sufficient to assert the right, only weigh slightly against the state. Similarly, assertions made on the eve of trial only weigh slightly against the state.

{114} Defendant made five pro forma demands for a speedy trial; then when it appeared his trial was finally going to occur, he filed his motion to dismiss. Because his first five assertions were merely pro forma and his motion was filed on the eve of trial, Defendant's assertion was not made with sufficient frequency and force to weigh this factor heavily against the State.

{115} While we agree that the weight of pro forma demands may increase when coupled with indications of an earnest assertion—rather than an exercise of gamesmanship—we do not agree with the majority's reframing of the third *Barker* factor. The majority seeks to establish a new rule in our speedy trial jurisprudence: "where the facts such as the force and frequency of the defendant's assertions establish the legitimacy of the defendant's stated desire for a speedy trial and where that conclusion is not refuted by contrary evidence, . . . the factor *should weigh heavily* in favor of the defendant." *Maj. op.* ¶ 54 (emphasis added). This overrules our precedent in which pro forma assertions are given little weight. *Ochoa*, 2017-NMSC-031, ¶ 41; *Gurule*, 2025-NMSC-010, ¶ 39. It also eschews the point that, to

establish a legitimate desire for a speedy trial, we expect defendants, especially those represented by counsel, to file more than a pro forma demand.

{116} The majority's decision to change from assigning *little weight* to pro forma assertions to assigning *heavy weight* to pro forma assertions—rather than *moderate* or *somewhat heavy* weight—is based on a law review article rather than any precedent by this Court. *Maj. op.* ¶ 54. The majority makes this change without citing any specific justification for departing from stare decisis. *See Johnson*, 1999-NMSC-028, ¶ 11.

{117} Where the heavy weight of the first *Barker* factor leads to a heavy weight of the second factor, a new metric which so easily grants heavy weight to the third factor is especially problematic because it permits defendants to avoid making a showing of particularized prejudice. *See Garza*, 2009-NMSC-038, ¶ 39. We would not so easily forego the particularized prejudice analysis, given that "some non-particularized prejudice is not the type of prejudice against which the speedy trial right protects." *Id*. ¶ 37 (brackets and internal quotation marks omitted). Prejudice is the central inquiry in speedy trial violations. *See id.* ¶ 12. Therefore, we cannot concur in an opinion which so dramatically lowers the bar for what is considered *heavy weight* for the other factors and thereby lowers the bar for when a showing of particularized prejudice is required.

## D. Prejudice to Defendant

{118} The fourth and final *Barker* factor is prejudice to the defendant. This is the most important factor, as "[t]he heart of the right to a speedy trial is preventing prejudice to the accused." *Id. Barker* identified three interests of defendants which the speedy trial right is meant to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532. "[W]e weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35.

{119} In cases where the other three *Barker* factors all weigh heavily against the state, we may presume prejudice and find in favor of the defendant. *See Gurule*, 2025-NMSC-010, ¶ 55 ("'To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the state.'" (brackets omitted) (quoting *State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230)). However, if as here, the other three factors do not weigh heavily against the state, a defendant must make a showing of particularized prejudice. *See Garza*, 2009-NMSC-038, ¶¶ 35-36. To do so, the defendant must provide evidence of the prejudice against them. *Id.* Specifically, a defendant should

"offer[] some actual evidence [of prejudice] in the form of affidavits, testimony, or documentation." *State v. Spearman*, 2012-NMSC-023, ¶ 39, 283 P.3d 272.

{120} As we explained above, the other three *Barker* factors in this case do not all weigh heavily against the State. Therefore, in order to prevail on his claim, Defendant must make a showing of particularized prejudice against him. He has not done so.

{121} Defendant was released on his own recognizance while this case was pending. In his briefing and motion to dismiss, Defendant argues that he suffered undue stress and anxiety and that he lost employment and housing opportunities. However, Defendant did not make a record of this prejudice. There was no evidence proffered or admitted during the hearing on the motion to dismiss, and no witnesses testified at the hearing. In fact, at the hearing, it was the district court judge who suggested, without prompting from defense counsel, that Defendant suffered "prejudice just beyond general anxiety that someone feels." She based this prejudice on the conditions of release, which she set, and then questioned "how the average person is supposed to comply with that for a period of three years." For his part, Defendant never made a motion for reconsideration of the conditions of release. There is simply nothing factual in the record that supports any alleged prejudice to Defendant beyond

the "oppression and anxiety . . . inevitably suffered by every defendant awaiting trial." *Samora*, 2016-NMSC-031, ¶ 21.

{122}  The only place the alleged prejudice appears is in Defendant's briefing and motion and in the comments of the district court judge. Because the arguments of counsel are not evidence, there is no evidence of prejudice against Defendant in this case. *See Spearman*, 2012-NMSC-023, ¶ 39. Without evidence of particularized prejudice and without the three other *Barker* factors weighing heavily against the State, Defendant's claim that his speedy trial right was violated fails.

**E.    Balancing**

{123}  *Barker* compels us to balance the four factors it identified and consider them "together with such other circumstances as may be relevant." 407 U.S. at 533. As we explained above, the length of delay weighs heavily against the State, the reasons for delay weigh moderately against the State, the assertion of the right weighs slightly against the State, but there was no evidence of any prejudice suffered by Defendant. Defendant was not in custody; his trial was delayed primarily by the district court due to its overcrowded docket. Additional delay resulted from the time it took to get results back from the drug lab and from the COVID-19 pandemic. Furthermore, it was not until the trial was finally set to go ahead as scheduled that

the case was dismissed. We find wisdom in Justice Daniel's concurrence in *Spearman*.

> I am especially concerned about our judicial branch's aborting a criminal prosecution on speedy trial grounds after the dismissing court itself has approved all the requested discretionary continuances . . . . [The state was] first told that the court approved rescheduling the trial and then told that their case was unexpectedly given a death sentence and dismissed without a fair trial, not because they did not appear with a case on the court-scheduled trial date, but because the court exercised its judicial discretion to agree to a change of the trial date before telling them that, as a result of that change, they could no longer prosecute the case at all.
>
> The speedy trial guarantee is undeniably important and may often be insufficiently protected. Our courts must find fair ways to enforce it and all other important rights. But in doing so, we should always try to resolve cases on their true merits where possible. . . . In taking speedy trial concerns into account before postponing trials, instead of afterward, judges can better protect the accused's right to a speedy trial without sacrificing society's interest in enforcement of its criminal laws.

*Spearman*, 2012-NMSC-023, ¶¶ 46-47 (Daniels, J., concurring).

## II.    CONCLUSION

{124}    The circumstances of this case do not warrant dismissal on speedy trial grounds. There was no prejudice to Defendant shown, and while the delay was long, the reasons for the delay and the assertion of the right were not so egregious that this case should result in the "severe remedy of dismissal of the indictment." *Barker*, 407 U.S. at 522. The majority here makes unnecessary changes to our speedy trial

jurisprudence that are not supported by precedent. Accordingly, we respectfully dissent.

 

 

_____

**DAVID K. THOMSON, Justice**

 

_____

**BRIANA H. ZAMORA, Justice**